UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY ESPOSITO, | ) | |
| | ) | |
| Petitioner, | ) | Cause No.  1:22-cv-1950-JMS-TAB |
| | ) | [1:18-cr-109-JMS-MJD] |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE IN OPPOSITION TO 28 U.S.C. § 2255 MOTION**

The United States, by counsel, responds to Jeffrey Esposito's motion, filed pursuant to 28 U.S.C. § 2255, requesting that the Court vacate his convictions on 19 counts and resentence him on the remaining two counts. He advances numerous freestanding claims of legal error while also alleging that his trial counsels were ineffective, primarily for failing to raise the legal arguments he now presses in his petition. Dkt. 4.[1]  Esposito's freestanding claims are both procedurally defaulted and without merit, and he fails to demonstrate that he received ineffective assistance of counsel.

_____

[1]Throughout this brief, the government will make the following references:  Dkt. = docket in this case; Crim. Dkt. = docket in Esposito's criminal case; PSR = Presentence Investigation Report (found at Crim. Dkt. 48); Plea Tr. = Plea Hearing Transcript (found at Crim. Dkt. 67); Sent. Tr. = Sentencing Hearing Transcript (found at Crim. Dkt. 73). Parenthetical citations for Esposito's claims and legal arguments refer to his amended petition, found at Dkt. 4.

# BACKGROUND

## *Esposito's Criminal Conduct*

The facts of Esposito's crime, as stated by the Seventh Circuit, are as follows:

> Jeffrey Esposito sexually assaulted and abused his [close relative][2] for years, beginning when [the victim] was seven or eight years old and ending a couple of years before he turned sixteen. Esposito's crimes were repetitive, shocking, and horrific. In addition to anal and oral penetration, including with objects, the abuse included urinating on, choking, whipping, tying, and putting a collar on the victim. Esposito documented his abuse in videos and photographic images which he shared online on the dark web. He had also downloaded other child pornography—hundreds of thousands of images and videos—by the time he was arrested by federal law enforcement.

*United States v. Esposito*, 1 F.4th 484, 485 (7th Cir. 2021). On April 11, 2018, Esposito was indicted on 21 separate criminal counts. Counts I-XX (the "production counts") charged Sexual Exploitation of a Child under 18 U.S.C. §§ 2251(a) and (e), while Count XXI (the "possession count") charged Possession of Child Pornography under 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). Crim Dkt. 11 at 3-5. The production counts, "each reflect[ed] a different instance of abuse documented in videos and images taken by the defendant." *Esposito*, 1 F.4th at 485. The indictment stated, in paragraph 10, that "[o]n *twenty separate occasions*," Esposito did "use, employ, entice, persuade, induce, and coerce a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." Crim. Dkt. 11 at 3 (emphasis added).

---

[2] In order to protect the identity of the minor victim, the government is avoiding references in the record to the specific relationship between the defendant and the victim.

2

Esposito filed a petition to enter a plea of guilty on April 26, 2019. Crim. Dkt. 38. In that petition, Esposito represented to the court that he had received a copy of the indictment, read it, and discussed it with his attorneys. *Id*. at 1. He indicated he understood the charges filed against him in the case and confirmed his understanding that "[t]he maximum statutory punishment for Counts 1 thru 20 is 30 years *per count* . . . ." *Id*. at 2 (emphasis added). After indicating his intent to plead guilty and his understanding of the rights he would give up in doing so, he dated and signed the petition. Crim. Dkt. 38 at 4.

### *Plea Hearing*

On June 5, 2019, Esposito pleaded guilty to all counts of the indictment without entering into a plea agreement with the government. Crim. Dkt. 44. At the plea hearing, Esposito was represented by both of his attorneys, William Dazey and Gwendolyn Beitz, Plea Tr. at 1. The Court placed the defendant under oath, then began its colloquy with him. *Id*. at 4. The Court asked Esposito whether he had fully discussed the charges with his attorneys, and whether he was "fully satisfied with the counsel, representation, and advice" he had been given by his attorneys. To both questions, Esposito answered, "Yes, ma'am." *Id*. at 6-7.  Esposito further affirmed that nobody had made "any promises or assurances to persuade [him] to plead guilty," and agreed that he was pleading guilty "of [his] own free will" and because he was guilty. *Id*. at 7.

The Court next explained that in the indictment, Counts 1 through 20 charged sexual exploitation of a child, and that those charges were based on "20 different

images or videos," which the defendant said he understood. Plea Tr. at 7. The Court explained that "the distinguishing factor between each of the [production] counts would be the different video or image that is listed in the indictment," which the defendant said he also understood. *Id*. at 8-9. The Court informed the defendant that "for each of those counts, you face a penalty range of up to 30 years," and later, the Court explained that it could "order the sentences on the counts in your case to run concurrently or consecutively; that is, one after the other." *Id*. at 9, 23. Both times, the defendant stated he understood. *Id*.

Because the parties did not enter into a plea agreement, there was no written stipulation of facts, and the government instead offered its evidence through a witness. Plea Tr. at 15. However, the government provided the defendant with an advance written copy of the testimony its witness would offer as the factual basis for the charges. *Id*. at 16. The prosecutor informed the Court that the defendant made handwritten edits to the factual summary, which remained on copies of the document that were provided to the Court and defendant during the witness's testimony. *Id*.

Detective John Pirics of the Carmel Police Department testified for the government. Plea Tr. at 17. He explained that after investigators learned that Esposito had been trading child pornography online, they searched Esposito's apartment and interviewed him. During Esposito's interview, he admitted that he "obtained child pornography by trading it with other users of various chat platforms," and that for a period of about four years, beginning when the victim was 10 years old, he engaged in sexual conduct with the victim about 1-3 times a month. *Id*. at 18-19.

This sexual conduct included anal and oral sex, as well as extreme acts including urinating on the victim, whipping him while he was tied with ropes, penetrating him with a sex toy, and once choking the victim during sex until he cried. *Id*. at 19. The witness further testified that Esposito "photographed and video recorded the sex acts and sexually explicit conduct with the [victim]," and would then send some of the files to others via online platforms. *Id*. at 19. The witness also testified that "Esposito sexually exploited [the victim] on many more occasions beyond the ones charged in the indictment." *Id*. at 20.

In support of the possession count, the witness stated that "Esposito saved approximately 2 terabytes of child pornography on his laptop computer and various external drives." Plea Tr. at 19. He later reiterated that the government examined the digital devices found inside Esposito's apartment and "recovered approximately 2 terabytes of child pornography, which were located on the laptop computer and external drives belonging to Esposito." *Id*. at 20.

After Det. Pirics completed his testimony, the Court referred the defendant to Government's Exhibit 1, the "listing of each of the videos or images that are charged in Counts 1 through 20." Plea Tr. at 21. That exhibit, while not available on the criminal docket, is identical to the chart that appears in paragraph 9 of the Presentence Report. PSR at 5-8. The defendant told the Court he had reviewed the exhibit and that it was accurate.  Plea Tr. at 21. The Court then asked, "[D]o you agree that the information summarized with the changes that you requested, summarized by Detective Pirics, is accurate?" *Id*. at 21. Ms. Beitz then asked for a

moment to speak to her client, after which the Court again asked, "So Mr. Esposito, do you agree with the information as summarized by Detective Pirics?" *Id*. at 22. The defendant responded, "Yes, ma'am." *Id*.

The Court ultimately accepted the defendant's plea and adjudged him guilty of Counts I through XXI. Plea Tr. at 27.

### *Presentence Report*

U.S. Probation Officer Kristine Talley authored a presentence investigation report, the first draft of which was completed and submitted to the parties on August 8, 2019. PSR at 1. In discussing the offense conduct, the PSR stated that "[o]n twenty separate occasions," the defendant sexually exploited the victim by producing visual depictions of him engaged in sexually explicit conduct. *Id*. at 4. The report then offered the chart, introduced as Gov't Ex. 1 at the plea hearing, that included descriptions of each of the 20 images or videos forming the bases of the production counts. *Id*. at 5-8. The descriptions on that chart made clear that each count was based on a separate visual depiction of a distinct sexual act involving the victim.

The PSR also discussed the defendant's personal background. PSR at 29-32. This included noting that, according to the defendant, he worked as a volunteer firefighter from 1981-1983 and was "a member of the National Fire Association, Indiana Fire Chiefs, New England Fire Chiefs, and was awarded Rookie of the Year and Firefighter of the Year" during his service.

On September 10, 2019, defense counsel submitted two objections and clarifications to the report. PSR at 40. First, the defense objected to paragraph 21,

which discussed the defendant's online chats with another offender named "M.M." *Id.* at 11. The report read that according to M.M.'s attorney, Esposito asked M.M. to kill his (Esposito's) wife. *Id.* Esposito objected to M.M.'s attorney as a source of information and insisted the comments were made in jest. *Id.* Second, the defense made a clarification as to when the defendant began producing images of the victim's sexual abuse. *Id.* The PSR writer responded to both defense comments and finalized the PSR on September 13, 2019. *Id.* at 1, 40.

### *Sentencing*

In advance of sentencing, Esposito's attorneys filed a sentencing memorandum that made a conservative request for a 420-month (35-year) sentence, imploring the Court to give Esposito a chance at release from prison near the end of his life. Crim. Dkt. 53 at 1-2. The defense cited numerous sources about the severe psychological impact of sentencing a defendant to die in prison, *id.* at 2, and it also referred the Court to Judge Posner's concurrence in *United States v. Craig*, 703 F.3d 1001 (7th Cir. 2012), which argued that "the [high] cost of imprisonment of very elderly prisoners, the [low] likelihood of recidivism by them, and the modest incremental deterrent effect of substituting a superlong sentence for a merely very long sentence, should figure in the judge's sentencing decision." *Id.* at 4 (citing *Craig*, 703 F.3d at 1004). The memo also emphasized Esposito's lack of criminal history and his acceptance of responsibility. *Id.* at 5.

At the outset of the sentencing hearing on January 7, 2020, the Court noted that:

> The Defendant has no prior criminal history, so he is in criminal history category I, and the guidelines at the level of 43-I would call for a sentence of life imprisonment. However, that is not a sentence that is allowed for under the statutory maximum for each of the counts. Consequently, the statutorily authorized maximum, running consecutive, becomes the guideline sentence. And that range, then, is 620 years or 7,440 months pursuant to Sentencing Guideline 5G1.2(b).

Sent. Tr. at 6. Neither party objected to the conclusion that the guideline "range" was 620 years. *Id.*

The defendant addressed the Court before the attorneys made arguments. He told the Court, "I still can't believe that I did . . . such horrifying things with a child, let alone [the victim]," and said his actions were "repulsive" and that they "disgust[ed]" and "sicken[ed]" him. Sent. Tr. at 14. He acknowledged the severity of his crimes and expressed remorse, then spoke about his personal background, discussing his 13 years of service as a volunteer firefighter and other forms of public service. *Id.* at 15-18. He also said that "knowing there was no plea deal," and "that this case had the potential for a life sentence," he tried to provide information to the government and assist as much as he could with other cases. *Id.* at 18-19.

Each of Esposito's two attorneys then argued on his behalf. Ms. Beitz acknowledged "how serious" Esposito's case was and emphasized that she did not intend to minimize the pain the victim endured, but then argued that the government's request for a staggering 620-year sentence was not rational. Sent. Tr. at 22-23. She emphasized that Esposito pleaded guilty without an agreement, which benefitted the victim, and had expressed "true remorse." *Id.* at 24-25. She also argued that a maximum sentence would make it difficult for Esposito to receive the

programming he would need while incarcerated; would leave Esposito without hope, endangering himself and others while in prison; and would leave similarly situated defendants without any incentive to plead guilty in their cases. *Id.*

Lastly, Ms. Beitz contrasted Esposito's case with that of David Bostic (11-cr-33). She pointed out that Bostic's case was also "severe and horrible," but in that case, the government argued that Bostic was more dangerous than other child sex offenders because he targeted very young, non-verbal children who would be unable to report their abuse. By the government's own reasoning, counsel argued, Esposito should therefore receive a lower sentence than Bostic, who was sentenced to 315 years. Sent. Tr. at 26-28.

Mr. Dazey then argued on Esposito's behalf. He acknowledged Esposito's crimes were "beyond significant" and "beyond serious," but he stressed that Esposito had accepted responsibility, and that while Esposito's crimes spanned many years, he was not a repeat offender who had been punished, released, and then reoffended because he "didn't learn his lesson." Ultimately, Mr. Dazey argued that effective life sentences should be reserved for cases that are "incrementally more serious" than Esposito's, and that Esposito ought to at least be given the chance of release near the end of his life. Sent. Tr. at 28-30. Altogether, the defense lawyers' sentencing arguments spanned nine transcript pages (Sent. Tr. at 22-30).

In discussing the production offenses, the government emphasized the extreme depravity of the sexual abuse, which included "bondage" and "physical torture," the years-long period that the abuse persisted, and the psychological trauma that

Esposito inflicted upon the victim. Sent. Tr. at 37. Regarding the possession offense, the government stated:

> From just what was found on his devices, the National Center for Missing and Exploited Children had 52,587 unique image files identified, almost 2,000 unique video files, comprising about 359 different series of children, and that does not count the multiples that were found throughout the devices, nor does it count the countless children who have yet to be identified.

*Id*. at 73.

Before imposing sentence, the Court discussed the nature and circumstances of the production offenses, noting that the word "torture" aptly described the "horror" that was inflicted upon the victim. Sent. Tr. at 42. In the Court's words, the defendant "betray[ed]" and "dehumanized" [the victim], causing him severe "psychological and physical damage." *Id*. at 43-44. Ultimately the Court concluded it could not "take a chance that [the defendant would] ever be around children again," and imposed an effective life sentence. The overall sentence included a 20-year maximum sentence on the possession count, which the Court said it was imposing "because of the sheer . . . volume of materials, the acts contained within those materials, the number of victims identified." *Id*. at 48. On the production counts, the Court sentenced Esposito to 30 years for the charges that involved the most egregious conduct, and 20 years for the others, some running concurrently and the others consecutively. Altogether, the Court's sentences were imposed as follows, resulting in an overall 200-year sentence:

| Count | Charge | Sentence | Ordering | Years added | Total |
|-------|--------|----------|----------|-------------|-------|
| Count 1 | Production | 30 years | Consecutive | 30 | 30 |
| Count 2-12 | Production | 20 years | Concurrent | 0 | 30 |
| Counts 13-15 | Production | 30 years | Consecutive | 90 | 120 |
| Count 16 | Production | 20 years | Concurrent | 0 | 120 |
| Count 17 | Production | 30 years | Concurrent | 0 | 120 |
| Count 18 | Production | 30 years | Consecutive | 30 | 150 |
| Count 19 | Production | 20 years | Concurrent | 0 | 150 |
| Count 20 | Production | 30 years | Consecutive | 30 | 180 |
| Count 21 | Possession | 20 years | Consecutive | 20 | 200 |

Sent. Tr. at 55-56.

### *Direct Appeal*

On direct appeal, Esposito argued only that "the district court should have determined his correct overall punishment and then conformed the sentences on the individual counts to achieve that total." *Esposito*, 1 F.4th at 487. That is, rather than announcing the sentences on individual counts and then totaling them, the Court should have first determined the appropriate overall sentence and then decided the precise punishment for each count. The Seventh Circuit held that the district court's approach was functionally the same, noting that "[t]he court's sentencing comments evince that it was pronouncing a de facto term of life imprisonment before pronouncing prison terms on each count." *Id*. at 488. In any event, the "rigid, two-step sequence" that Esposito requested was not required by law. *Id*. Finding no error, the appellate court affirmed Esposito's sentence. *Id*. at 489. Nowhere in his appeal did Esposito advance any of the claims now presented in his § 2255 petition.

### *Esposito's § 2255 Petition*

On October 3, 2022, Esposito filed his § 2255 petition – styled as a "motion to vacate and resentence" – along with a supporting declaration. On October 11, 2022, he filed an amended petition. Dkt. 4.[3] He advances freestanding claims of legal error that do not relate to the effectiveness of his attorneys (the "non-ineffective-assistance-of-counsel" or "non-IAC" claims), and he also alleges that his attorneys were ineffective in several respects. Dkt. 4 at 1. Esposito requests that the court vacate his convictions and sentences for Counts II-XX, which charge production, and resentence him on Count I (production) and Count XXI (possession).  Below is the government's summary of Esposito's arguments, modified slightly from Esposito's own summary on page 1 of his amended petition.

### Non-IAC Claims

- CLAIM 1: Counts II-XX, which charged production under 18 U.S.C. § 2251(a), were multiplicitous, in that they charged the same criminal conduct that was charged in Count I.

- CLAIM 2: Esposito's guilty pleas to Counts II-XX were unknowing and involuntary, because (a) the counts were multiplicitous,[4] and (b) his attorneys

---

[3] Esposito's petition and amended petition were timely filed. Esposito's conviction became final 150 days after the Seventh Circuit issued its affirmance on June 11, 2021. *See* Order at 1, 589 U.S. —— (U.S. Mar. 19, 2020) (lengthening deadline for certiorari petitions from 90 to 150 days) and Order at 1, 594 U.S. —— (U.S. July 19, 2021) ("[I]n any case in which the relevant lower court judgment . . .  was issued prior to July 19, 2021, the deadline to file a petition for a writ of certiorari remains extended to 150 days from the date of that judgment . . . ."). The conviction therefore became final on November 8, 2021, making the deadline for Esposito's petition November 8, 2022.

[4] Esposito, in summarizing his second claim (at 1) uses the term "duplicitous," but he clearly means "multiplicitous" – the term he uses in describing Claim 1. "'Duplicity'

failed to inform him he could face consecutive sentences.

- CLAIM 3: The government witness's testimony in support of Count XXI (the possession count), incorrectly alleged that Esposito possessed two terabytes of child pornography, and this inflated figure adversely affected Esposito's sentence on that count.

- CLAIM 4: Esposito's 200-year sentence was excessive as compared to similarly situated defendants and resulted in an unwarranted sentencing disparity in violation of 18 U.S.C. § 3553(a)(6).

<u>IAC Claims</u>

- CLAIM 5: Esposito's counsel was ineffective for (a) failing to sufficiently investigate the case; (b) failing to challenge multiplicitous charges; (c) failing to argue that his 200-year sentence resulted in an unlawful sentencing disparity; (d) making arguments at sentencing that were counterproductive; (e) promising Esposito a 40-year sentence.

## 28 U.S.C. § 2255 STANDARD OF REVIEW

A motion pursuant to § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). To obtain relief under § 2255, Esposito must show that his sentence violates the Constitution or laws of the United States, the court was without jurisdiction to impose the sentence, the sentence was in excess of the maximum

---

in an indictment refers to the joining in a single count of two or more distinct offenses, whereas 'multiplicity' occurs when a defendant is charged for a single offense under more than one count of an indictment." *United States v. Nguyen*, 99-cr-210, 1999 WL 1220761, at *1 (E.D. La. Dec. 15, 1999).

authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "Hence, relief is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

Section 2255 "is an extraordinary remedy." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). The reason is straightforward: "because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Id.* Esposito already received full process here; and, as discussed below, he cannot meet his burden to show he is entitled to "an extraordinary remedy." *Id.*

## DISCUSSION

### I.   Esposito's non-IAC claims are procedurally defaulted and meritless.

Esposito's free-standing, non-IAC claims are procedurally defaulted because he failed to raise them before the district court or on appeal. This Court should therefore not consider the non-IAC claims. In any event, the non-IAC claims fail on their merits.

### A. Esposito has defaulted his non-IAC claims.

"Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale*, 710 F.3d at 713–14); *see also Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)

14

("A § 2255 petition is not a substitute for direct appeal."). Courts have applied the procedural-default rule to exactly the sorts of claims Esposito raises here. *See*, *e.g.*, *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) (petitioner's claim that his guilty plea was involuntary was procedurally defaulted because he failed to raise the claim on direct appeal); *United States v. Griffin*, 765 F.2d 677, 680 (7th Cir. 1985) ("Because [defendant] failed to include his multiplicity claim in his direct appeal, he is barred from bringing that issue in a § 2255 petition unless he is able to demonstrate good cause for his failure to appeal the issue.").

Procedurally defaulted constitutional claims may be considered on collateral review only if the petitioner establishes "(1) actual innocence or (2) cause and prejudice." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Esposito does not suggest he is innocent, and he explicitly states that he does not wish to withdraw his guilty plea. Dkt. 4 at 11 n.1. Therefore, he must establish cause and prejudice. "To excuse a procedural default for cause and prejudice, a petitioner must demonstrate both (1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claim." *Delatorre*, 847 F.3d at 843 (citing *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989)). Esposito has not acknowledged that he failed to raise these claims previously, much less has he explained that failure. Even if he could, he cannot establish prejudice stemming from the violations alleged in the defaulted claims, because those claims are meritless.

15

**B. The non-IAC claims are meritless.**

1. <u>Counts II-XX were not multiplicitous.</u>

Esposito claims he could only lawfully be convicted of one count of producing child pornography. Dkt. 4 at 5-6. He argues that use of the word "any" in 18 U.S.C. § 2251 – prohibiting the use of "any minor" to engage in "any sexually explicit conduct" for the purpose of producing "any visual depiction" of such conduct – makes it unclear what the appropriate unit of prosecution is. Therefore, Esposito says, under the rule of lenity, he can only be found guilty of a single count of production, even though he produced 20 images of the victim's sexual abuse. *Id.*

No court has endorsed this interpretation of § 2251. While Seventh Circuit has not addressed the issue, several appellate courts have, and all have concluded that the appropriate unit of prosecution is the image of the child being sexually abused. The Tenth Circuit addressed the issue in *United States v. Esch*, 832 F.2d 531 (10th Cir. 1987), holding as follows:

> The inquiry as to what constitutes the correct unit of prosecution focuses in part on the identification of the key element of the federal offense . . . . The key element of [production of child pornography] is the use a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct. That conclusion is supported by the legislative history of the statute, which indicates that Congress intended to protect children from the abuse inherent in the production of pornographic materials. S.Rep. No. 95–438, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 53. The fact that multiple photographs may have been sequentially produced during a single photographing session is irrelevant. Each photograph depended upon a separate and distinct use of the children.

*Id.* at 541-42.

In *United States v. Smith*, 919 F.3d 1 (1st Cir. 2019), the First Circuit

16

addressed multiplicity claims from a defendant who had "produced six separate videos over the course of an hour, each made at a different time and depicting a discrete sexual act." *Id*. at 16. That defendant, like Esposito here, cited cases finding ambiguity in the felon-in-possession statute, 18 U.S.C. § 922(g), and argued that "the word 'any' renders Section 2251(a) similarly ambiguous because it 'could be found to mean either a single instance of producing multiple images, or the many different images themselves.'" *Id*. The court disagreed, finding "no ambiguity in Section 2251," and agreeing with *Esch*'s holding that each image created is a separate offense. *Id*. The court therefore concluded that the six separate counts charging violations of § 2251 were not multiplicitous. *Id*.

Two other federal appellate courts have followed suit. *United States v. Fee*, 491 F. App'x 151, 157 (11th Cir. 2012) ("The text of section 2251(a) makes clear that Congress proscribed each discreet visual depiction of a minor as a separate offense."); *United States v. Tashbook*, 144 F. App'x 610, 614–15 (9th Cir. 2005) (agreeing with *Esch* "that each photograph constitutes a separate crime" under § 2251(a)).

In Esposito's case, the indictment charged 20 distinct images and videos that Esposito had created "on twenty separate occasions," and which depicted discrete sexual acts. Crim. Dkt. 11 at 3; PSR at 5-8. He therefore was properly charged with 20 counts of violating Section 2251(a).[5]

---

[5] Besides the indictment itself describing "at least twenty separate occasions," the description of the images and videos representing each count also demonstrate the distinct occasions, including by pointing to aspects such as the sexual act, the location, and other circumstances described.  PSR at 5-8. Further, the PSR details the "hundreds of images and videos depicting the sexual exploitation of the victim

2.  <u>Esposito's plea was knowing and voluntary</u>.

Esposito claims his plea was not knowing or voluntary for two reasons. First, he argues the production counts were multiplicitous, and he could not have entered the plea knowingly and voluntarily after the Court misinformed him that "the distinguishing factor between each of the [production] counts" was "the different video or image listed in the indictment." Dkt. 4 at 7; Plea Tr. at 8-9. But the Court did not misinform Esposito about the elements of the offenses. What the Court told the defendant was a correct statement of the law, as demonstrated by the cases cited above.

Second, Esposito faults his attorneys and the Court for leaving him under the false impression that he was "facing 40 years, not 200." Dkt. 4 at 7-8. This claim is belied by the record. Beginning with his signed petition to enter a plea, Esposito affirmed his understanding that the production counts carried a penalty of 30 years "per count." Crim. Dkt. 38 at 2. At the plea hearing, the Court reiterated that "for each of [the production] counts," Esposito faced "a penalty range of up to 30 years," and explicitly told Esposito that the sentences could "run concurrently or consecutively; that is, one after the other." Plea Tr. at 9, 23. Both times, Esposito stated under oath that he understood the Court. *Id*. He also stated that he was "fully satisfied" with the representation he received from his lawyers, and that no one had made "any promises or assurances to persuade [him] to plead guilty." *Id*. at 6-7.

---

by the defendant" and that "the defendant admitted that he engaged in sexual acts and sexual conduct with the victim approximately one to three times a month at various locations" during a "period of approximately four years." PSR at ¶¶ 10-11.

Esposito cannot now credibly claim that he did not understand the penalties he faced. "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). The Court may reject this claim without any further inquiry. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction"); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) ("allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false) (internal quotations omitted); *Lasiter v. Thomas,* 89 F.3d 699, 702-03 (10th Cir.1996) ("[The petitioner] [i]s bound by his solemn declarations in open court and his unsubstantiated efforts to refute that record [a]re not sufficient to require a hearing"); *Ouellette v. United States,* 862 F.2d 371, 377-78 (1st Cir.1988) (holding that an evidentiary hearing is not required when a petitioner's uncorroborated allegations are directly contradicted by his testimony at the time of his plea colloquy).

3. <u>The contraband amount supporting Count XXI was accurate, and in any event, did not affect the Esposito's sentence.</u>

Next, Esposito claims the two-terabyte figure used to describe the volume of his child pornography collection was inaccurate, and that this adversely affected his sentence on Count XXI. Dkt. 4 at 8. This claim is also contradicted by Esposito's own

sworn statements to the Court. At two separate points during his testimony, Det. Pirics informed the Court that investigators found two terabytes of child pornography on Esposito's digital devices. Plea Tr. at 19-20. Esposito affirmed that Det. Pirics' testimony was accurate. *Id*. at 22. Moreover, the two-terabyte figure was twice mentioned in the PSR, but Esposito did not object to it, despite making other objections to the report. PSR at 8, 12, 40. This claim should therefore also be rejected out of hand.

Moreover, the record does not support Esposito's claim that the two-terabyte figure had any impact on his sentence. Both the PSR and the government provided the court with more easily understandable counts of Esposito's contraband images and videos. The PSR noted that Esposito "possessed approximately 2 Terabytes of child pornography, including *thousands of videos and hundreds of thousands of images*." PSR at 8 (emphasis added). The government noted that Esposito's devices had "52,587 unique image files [and] almost 2,000 unique video files, comprising about 359 different series of children," and informed the Court that those figures did not include the "multiples that were found throughout the devices," thus alerting the Court to what Esposito points out in his petition (that the 2TB figure counted "many backup sets containing the same media files"). Dkt. 4 at 8. For its part, when imposing sentence on Count XXI, the Court noted the "sheer . . . volume" of contraband, but it never mentioned the two-terabyte figure or gave any indication that it affected his sentence. Any error with respect to the quantity of contraband is therefore harmless.

4.   <u>Esposito's sentence did not violate 18 U.S.C. § 3553(a)(6).</u>

Section 3553(a)(6) directs a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Esposito claims (at 15-18) his 200-year prison term creates an unwarranted sentencing disparity and he should therefore be resentenced. The Court should reject this claim for several reasons.

First, Esposito's sentence does not run afoul of Section 3553(a)(6) because it complied with the Sentencing Guidelines, which the parties agreed called for an effective life sentence of 620 years. Sent. Tr. at 6. Indeed, the Court's 200-year sentence was technically below the Guidelines recommendation, but for all practical purposes, the Court imposed a de facto life sentence as required. And "because the guidelines are designed to avoid unwarranted disparities, a sentence . . . that is within the guidelines range necessarily complies with § 3553(a)(6)." *United States v. Vaughn*, 431 F. App'x 507, 509–10 (7th Cir. 2011). *Accord United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("a district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities"). For this reason alone, Esposito's claim fails.

Moreover, the sentencing disparity Esposito tries to establish is illusory. "It is not enough for a defendant to argue that a few cases from any particular circuit seem to cast doubt on his sentence." *United States v. Newsom*, 428 F.3d 685, 689 (7th Cir. 2005). "To evaluate sentencing disparities, it is not just the crime of conviction and the total length of the sentence that is pertinent; the specific facts of the crimes and

the defendant's individual characteristics should also be considered." *United States v. Turner*, 206 F. App'x 572, 577 (7th Cir. 2006). The cases Esposito cites in his petition (Dkt. 4 at 16-18) simply do not compare to his own.

In *Fisher*, for example, the defendant engaged in surreptitious recording and convinced a 14-year-old to send nude photos of herself, but he was not convicted of any hands-on sexual abuse. *United States v. Fisher*, 1:15-cr-71, 2021 U.S. Dist. LEXIS 30242 at *2. In *Sutherlin*, the defendant similarly posed as a female and induced minors to produce sexually explicit images of themselves. *United States v. Sutherlin*, 1:17-cr-213-JMS-DML, Dkt. 24 at 11-13. And in *United States v. Lewis*, the defendant traveled across state lines to have sex with what he thought was a 14-year-old girl but was actually an undercover police officer. 823 F.3d 1075, 1079 (7th Cir. 2016). *Id*.[6]

While these defendants were convicted of the same statutory offense as Esposito, they are fundamentally different. Esposito committed direct, hands-on sexual abuse of his victim for many years and recorded at least 20 instances of that abuse. The nature of the sexual abuse was akin to "torture" in the words of this Court, and was characterized by the Seventh Circuit as "shocking" and "horrific" Sent. Tr.

---

[6] Lewis was 66 years old at the time of sentencing, had serious health problems including congestive heart failure, and was sentenced to 35 years in prison, what the sentencing court recognized was a de facto life sentence. 823 F.3d at 1079. Pointing to other *de facto*-life-sentence cases does not establish a disparity, much less an unwarranted one. "A numerical disparity between sentences cannot be a basis for declaring a sentence unreasonable when the practical effect of the sentence is the same in both cases." *United States v. Lang*, 717 F. App'x 523, 548 (6th Cir. 2017) (upholding 3,360-month sentence, which the court considered "identical" to an 830-month sentence.).

at 42; *Esposito*, 1 F.4th at 485. A defendant "bears the burden of showing that an unwarranted sentencing disparity renders his sentence substantively unreasonable." *United States v. Johnson*, 980 F.3d 1364, 1386 (11th Cir. 2020). Esposito fails to carry that burden here.[7]

## II.  Esposito fails to establish that he received ineffective assistance of counsel.

### *Ineffective Assistance of Counsel Standard*

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) trial counsel's performance fell below objective standards for reasonably effective representation and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). If Esposito cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

"With respect to the performance prong, [Esposito] must overcome the 'strong presumption that counsel's conduct falls within the range of reasonable professional

---

[7] Esposito also cites (at 17) *United States v. Shannon*, a 20-count child pornography *distribution* case in which the defendant received a 60-year sentence. No. 1:15-cr-20014-001 (C.D. Ill. 2015). There is a stark difference between 20 instances of spreading child pornography that someone else created and 20 instances of sexually abusing one's close relative and recording it. Moreover, Esposito's claim that he, unlike Shannon, "distributed nothing," is false. See Plea Tr. at 19, 21-22; PSR at ¶¶ 6, 15-16, 38, 147, and 215.

 Esposito's last case citation (at 17-18), to *United States v. Graziotti*, 619 F. App'x 980 (11th Cir. 2015), merits little response. Graziotti was another producer of child pornography who received an effective life sentence. Esposito (at 18) thinks his crimes were "objectively far less serious" than Graziotti's, but this does not begin to establish that Esposito's crimes – horrific as they were – did not also deserve an effective life sentence.

assistance.'" *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). He must direct the Court to "specific acts or omissions." *Id.* The Court must then consider in light of all of the circumstances whether counsel's performance was outside the wide range of professionally competent assistance. *Id.*

In order to satisfy the prejudice component, Esposito must establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In addition, in attacking trial counsel's performance, he "must 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Frentz v. Brown*, 876 F.3d 285, 293 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 689).

### A. Esposito's attorneys were not ineffective for failing to investigate the case.

Esposito claims (at 18-20) that his attorneys were ineffective because they did not properly investigate his case. He supports this allegation with a list of actions his lawyers failed to take. "[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (cleaned up). A district court need not grant an evidentiary hearing to further investigate claims in a § 2255 petition that are "vague" and "conclusory". *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017). Esposito's claims are exactly that.

24

First, Esposito argues (at 18) his attorneys should have interviewed his wife and the victim. But nowhere in his petition or his declaration does Esposito explain why counsel needed to interview them, what they would have said if interviewed, or how their comments would have helped him at sentencing. He therefore fails to articulate why his lawyers performed inadequately or how a more thorough investigation would have changed the outcome of the sentencing proceeding. He therefore fails to establish either deficient performance or prejudice on this point.[8]

Second, Esposito claims (at 18) his attorneys never reviewed the discovery materials. He has no evidence of this. He merely writes in his declaration that the attorneys never "g[ave him] the impression they had viewed the discovery" (Dkt. 1-1 at ¶ 161), and he assumes that if they had reviewed the discovery, they would have pressed his meritless multiplicity claim (see Section I(B)(1) above) and would have challenged the two-terabyte contraband figure supporting the possession charge, which Esposito himself agreed under oath was correct. Dkt. 4 at 18; Plea Tr. at 19. His claim is too speculative to establish deficient performance. He also fails to

---

[8] There is little reason to think Esposito's victim, in particular, would have offered defense counsel anything useful, given his heart-wrenching victim impact statement, through which he told the Court that the defendant treated him like an "object" and a "dog," made his life a "nightmare," and drove him to suicide attempts. Sent. Tr. at 10-13. Further, the victim was forensically interviewed and provided additional detail about the horrific abuse he experienced over the course of many years. That interview would have been made available to defense counsel during discovery, but was also detailed in the PSR.  PSR at ¶¶ 27-29. Any belief that an interview of the victim would have furnished mitigation evidence is purely speculative. To the extent Esposito wished to inform the Court that his family had not abandoned him despite his crimes, this point was made by his lawyer (Sent. Tr. at 28-29) and in the PSR (at ¶ 243).

establish prejudice. His multiplicity claim, as explained above, lacks merit, and if his lawyers had raised it, the Court would have rejected it. As also discussed above, there is no reason to believe the Court crafted its sentence on Count XXI based on the 2TB contraband figure. If counsel had quibbled over the exact amount of contraband that Esposito possessed, the Court would have concluded, at a minimum, that Esposito possessed many thousands of images and videos, and it would have imposed the same sentence.

Third, Esposito claims (at 18) that his attorneys canceled investigation in mitigatory evidence that could have assisted him at sentencing. Here, too, Esposito's claim lacks the required specificity. He does not identify any mitigatory evidence his lawyers would have uncovered with more investigation or explain how that evidence would have assisted him at sentencing. He writes (at 20) that an "adequate investigation" would have revealed that he was "a longtime decorated volunteer firefighter with decades of celebrated community involvement," and that there was "no accusation he ever abused any other child." However, Esposito's public service was detailed in the PSR (at 31-32) and emphasized by Esposito himself during his allocution, Sent. Tr. at 17-18, and there is no indication in the record that the Court believed Esposito was the subject of other child-abuse allegations. Esposito therefore fails to establish that his counsel performed deficiently or that he suffered any prejudice due to an insufficient mitigation investigation.

**B. Esposito's attorneys were not ineffective for failing to raise a multiplicity challenge to the production counts.**

Esposito (at 20-21) repurposes his multiplicity argument (see § I(B)(1) above) as an ineffective-assistance claim, arguing that his lawyers performed deficiently by failing to raise it. As the government has shown, Esposito's multiplicity argument has no merit, and so his related ineffective-assistance claim necessarily fails along with it. Even if Esposito were to argue that his counsel should have attempted the multiplicity argument because it had not been expressly foreclosed in the Seventh Circuit, he would still fail to establish deficient performance. Esposito was unable to cite a single case in which a court found that § 2251(a) charges based on distinct images were multiplicitous, particularly distinct images which were obviously depicting different sexual acts and circumstances evidencing they were taken over a period of time. *See also* PSR at ¶¶ 9-11. The Constitution does not require defense counsel "to discover and present a complex and novel legal argument that may or may not have succeeded." *Winfield v. Dorethy*, 956 F.3d 442, 462 (7th Cir. 2020). *Accord United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) ("A lawyer does not perform deficiently by failing to raise novel arguments that    are unsupported by then-existing precedent."); *United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014) ("We have consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot contentions."). Esposito therefore fails to establish deficient performance. He also fails to establish prejudice, because if counsel had raised the multiplicity argument, the Court would have rejected it as meritless.

**C. Esposito's attorneys were not ineffective for failing to argue that his 200-year sentence violated 18 U.S.C. § 3553(a)(6).**

Reviving another one of his freestanding claims, Esposito alleges (at 21) that his attorneys were ineffective for failing to argue that a 200-year sentence would create an unlawful sentencing disparity when compared to the cases he cites in his petition (at 16-18). As discussed above in Section I(B)(4), none of the cases Esposito cites demonstrate that his 200-year sentence was unreasonable. Esposito therefore fails to demonstrate that counsel performed deficiently by failing to cite additional cases. He also fails to demonstrate prejudice, because there is no reasonable probability that presentation of additional arguments about sentencing disparities would have altered the Court's sentence. The Court concluded that Esposito was so dangerous that it could not run the risk of him ever "be[ing] around children again." Sent. Tr. at 46. Esposito cites no cases, and the government is aware of none, that would call that judgment into question or demonstrate that a 200-year sentence for Esposito's crimes was disproportionate. Moreover, an effective life sentence was recommended under the sentencing guidelines (PSR at ¶ 266), and within-guidelines sentences are presumptively reasonable,[9] meaning the Court would have had no concern that its sentence ran afoul of § 3553(a)(6). Had Esposito's lawyers made the arguments he wishes they had made, he would have received the same sentence.

---

[9] *See Vaughn*, 431 F. App'x at 509–10; *Pulley*, 601 F.3d at 668.

**D. Esposito's attorneys were not ineffective in advocating for him at sentencing.**

Esposito next claims (at 21-22) that his attorneys did him more harm than good with their sentencing arguments. In part, he simply reiterates his previous argument that his lawyers should have pointed to the cases he cites in his petition (at 16-18). But as discussed above, those cases, which involved no hands-on abuse, would have been easily distinguished by the government and only served to highlight the severity of Esposito's crimes.

Additionally, Esposito takes issue (at 21) with his attorneys' decision to emphasize the *Bostic* case, considering Bostic received a 315-year sentence. But his attorneys' strategy was to emphasize that, using the government's own reasoning, Bostic was a worse offender than Esposito, because Bostic targeted very young children who could not report their abuse. While Bostic deserved an effective life sentence, defense counsel argued that Esposito should receive something incrementally less severe – a sentence that would allow him release near the end of his natural life. Esposito's second-guessing of this strategy does not establish deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 681 (1984) ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed     decisions, strategic choices     must     be respected in these circumstances if they are based on professional judgment."); *accord Jones v. United States*, Nos. 5:10-CR-228, 5:13-CV-414, 2016 WL 3951092, at *4 (E.D.N.C. July 20, 2016) ("Counsel's arguments at sentencing were tactical ones entitled to deference and fall comfortably within the wide range of professionally

competent representation."); *Lopez-Merida v. United States*, Nos. 08-CR-1841, 13-CV-812, 2014 WL 12785136, at *6 (D.N.M. Oct. 17, 2014) ("Counsel had wide latitude to make tactical decisions throughout the proceedings — including which arguments to advance at the sentencing hearing.").

Elsewhere in his petition (at 13-15), Esposito similarly argues that his attorneys made scant, counterproductive arguments for him at sentencing. He relies heavily on *United States v. Ryals*, 512 F.3d 416 (7th Cir. 2008), in which the Seventh Circuit remanded for resentencing. But Esposito's case and *Ryals* are worlds apart. In *Ryals*, communications between the defendant and his lawyer had "completely broken down." *Id*. at 420. The defendant filed a motion for appointment of new counsel, and at the sentencing hearing, the judge asked the attorney whether he could adequately represent the defendant, and the attorney "unequivocally answered 'no'." *Id*. The judge nonetheless proceeded with the sentencing hearing and required the attorney to continue representing Ryals. *Id*. at 419. During the hearing, defense counsel's "only substantive contribution" was to request a sentence of around 360 months, remind the court that the guidelines were advisory, and point out that Ryals offended soon after being released from prison – a statement that "did more harm than good." *Id*. at 421.

In contrast, Esposito told the Court at the plea hearing that he was "fully satisfied with the counsel, representation, and advice" he had received from his attorneys. Plea Tr. at 6-7. Between the plea hearing and sentencing hearing, Esposito did not file any motions for appointment of new counsel or otherwise indicate to the

Court that his assessment of his lawyers' performance had changed. In advance of the sentencing hearing, Esposito's lawyers submitted a written sentencing memorandum citing medical journals, academic literature, and case law, all in support of their argument that their client should be given a chance at release near the end of his life. Crim. Dkt. 53. At the hearing itself, two attorneys separately argued on his behalf, their allocution spanning nine transcript pages. The thoughtful, strategic representation Esposito received from his attorneys pales in comparison to *Ryals*, in which the court found that the defendant "essentially represented himself at the sentencing hearing, with very little participation from counsel." 512 F.3d at 420. Esposito fails to demonstrate that his attorneys performed deficiently.[10]

Esposito also cannot establish prejudice. If his attorneys had not mentioned the *Bostic* case, there is no reason to believe his sentence would have been different. The record makes clear that the Court concluded a life sentence was appropriate because Esposito brutally and repeatedly sexually abused and exploited his close relative for years. Had defense counsel omitted reference to the *Bostic* case, the Court would have reached the same conclusion.

---

[10] Esposito also faults his attorneys for acknowledging the seriousness of his offenses, noting that they called his crimes "severe and horrible," and "beyond significant and beyond serious." Dkt. 4 at 11, 15. This was not deficient representation. *See Nixon v. Epps*, 405 F.3d 318, 327 (5th Cir. 2005) (no deficient performance where counsel at death penalty phase of trial referred to defendant's crimes as "heinous, cruel[, and] atrocious," which was part of counsel's strategic decision to ask for mercy.). It also did not prejudice the defendant, who earlier in the hearing had himself acknowledged that he did "horrifying things with a child" that were "repulsive" and which "disgust[ed]" and "sicken[ed]" him. Sent. Tr. at 14.

### E. Esposito fails to establish that his lawyers promised him a particular sentence.

Esposito also alleges (at 22) that his lawyers were deficient for "promis[ing]" him a 40-year sentence in exchange of his guilty plea. This claim contradicts his sworn statements at the plea hearing and should be rejected. See Plea Tr. at 7:

> THE COURT: . . . Mr. Esposito, has anyone made any promises or assurances to persuade you to plead guilty?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Has anybody threatened you or forced you in any way to plead guilty?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Are you pleading guilty today of your own free will and because you are guilty?
>
> THE DEFENDANT: Yes, ma'am.

As discussed above (in Section I(B)(2)), Esposito elsewhere conveyed to the Court that he understood the maximum penalty he faced. Under the case law the government has cited above, the Court may reject Esposito's claim without holding an evidentiary hearing. *See Peterson*, 414 F.3d at 827; *Lemaster*, 403 F.3d at 221; *Lasiter,* 89 F.3d at 702-03; *Ouellette*, 862 F.2d at 377-78. Because Esposito's claim of a "promised" sentence can be rejected out of hand, he fails to establish deficient performance. He also cannot establish prejudice. Even if his attorneys had told him to expect a 40-year sentence, the PSR and the Court made clear to him that he could be imprisoned for the rest of his life. Esposito acknowledged this at the sentencing hearing, stating that he knew his case "had the potential for a life sentence." Sent. Tr. at 18-19. There is

therefore no reasonable probability that if Esposito's lawyers had better managed his expectations, he would not have pleaded guilty.[11]

### F. Esposito's remaining complaints about his lawyers do not entitle him to relief.

Elsewhere in his petition, Esposito complains about his relationship with his attorneys, alleging (at 1, 9-15) that he "suffered an irretrievable communications breakdown" with counsel. Although organized separately, most of these allegations support his more specific claims, which the government has addressed above. The remaining accusations are underdeveloped. For example, Esposito complains that his lawyers' "voicemail boxes were chronically full," and that they did not help him decide whether to get divorced, did not discuss "possible bail packages" with him, and failed to protect his "physical and mental wellbeing." Dkt. 4 at 9-11. Nowhere does Esposito explain how his various grievances translate to deficient representation regarding his plea and sentencing or articulate any prejudice that he suffered. The Court therefore need not address these miscellaneous allegations.[12]

---

[11] Moreover, if defense counsels' deficient performance led Esposito to plead guilty when he otherwise would not have, the appropriate remedy would be to allow him to withdraw his plea. Esposito states explicitly that he does not wish for his petition to be construed as a motion to withdraw his plea, Dkt. 4 at 11 n.1, and the Court therefore need not address this contention at all. *See United States v. Nelson*, 124 F.3d 206 (7th Cir. 1997) (declining to review appellant's sentence, because, if appellant's plea "was made under improper conditions, his remedy would be the withdrawal of his plea (not this court's examination of his sentence)" and appellant "has not indicated that he wishes to withdraw his guilty plea.").

[12] Esposito also briefly argues (at 18) that "had counsel acted with reasonable diligence, they would have placed [him] in position to tender a more favorable and compelling plea offer from the government." This claim is also too vague and conclusory

**CONCLUSION**

The United States respectfully urges the Court to deny Esposito's 28 U.S.C. § 2255 motion.

                              Respectfully Submitted,

                              ZACHARY A. MYERS
                              United States Attorney

              By:    s/ *Adam Braskich*
                     Adam Braskich
                     Trial Attorney

---

to merit consideration. Esposito does not explain what counsel would have un-earthed with more effort that would have prompted the government to make him a plea offer, and indeed, the record indicates the government had no intention of mak-ing an offer. *See* Plea Tr. at 7. *See also Berkley v. United States*, No. 1:18-CR-72, 2021 WL 1238578, at *6 (W.D.N.C. Apr. 2, 2021) (rejecting as "purely speculative" a petitioner's claim that his counsel should have negotiated a more favorable plea agreement, observing that "Petitioner has failed to come forward with any evidence that, if counsel had performed differently, a more favorable plea offer was forthcom-ing from the Government or would have been accepted by the Court.").

## CERTIFICATE OF SERVICE

I certify that on February 3, 2023, a copy of the foregoing was filed

electronically and that a copy was mailed the next business day, by first class

U.S. Mail, postage prepaid and properly addressed to the following:

> Jeffrey Esposito
> Reg. No. 16305-028
> Marion – U.S. Penitentiary
> P.O. Box 1000
> Marion, IL 62959

> s/ *Adam Braskich*
> Adam Braskich
> Trial Attorney
> U.S. Department of Justice
> Criminal Division
> Child Exploitation and Obscenity Section
> 1301 New York Avenue NW
> Washington, DC, 20005
> Telephone: 202-616-4598
> Fax: 202-514-1793
> Email: Adam.W.Braskich@usdoj.gov