UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY ESPOSITO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 1:22-cv-01950-JMS-TAB |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**Order Denying Motion for Relief Pursuant to 28 U.S.C. § 2255
and Denying Certificate of Appealability**

Jeffrey Esposito pled guilty to twenty counts of sexual exploitation of a child and attempted sexual exploitation of a child and one count of possession of child pornography. He was sentenced to 200 years in prison. Esposito now challenges his guilty plea and sentence under 28 U.S.C. § 2255, asserting several freestanding claims of error and that he was deprived of constitutionally effective assistance of counsel. For the reasons that follow, his motion is **denied**. In addition, the Court finds that a certificate of appealability should not issue.

**I.  The § 2255 Motion**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which

1

results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878−79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Background

### A. Criminal Conduct and Charges

The facts of Esposito's crime, as stated by the Seventh Circuit, are as follows:

> Jeffrey Esposito sexually assaulted and abused his [close relative][1] for years, beginning when [the victim] was seven or eight years old and ending a couple of years before he turned sixteen. Esposito's crimes were repetitive, shocking, and horrific. In addition to anal and oral penetration, including with objects, the abuse included urinating on, choking, whipping, tying, and putting a collar on the victim. Esposito documented his abuse in videos and photographic images which he shared online on the dark web. He had also downloaded other child pornography— hundreds of thousands of images and videos—by the time he was arrested by federal law enforcement.

*United States v. Esposito*, 1 F.4th 484, 485 (7th Cir. 2021).

At the time of his arrest, Esposito agreed to speak with the arresting officer. *See United States v. Esposito*, No. 1:18-cr-109-JMS-MJD-1 (S.D. Ind.) ("Cr. Dkt."), Cr. Dkt. 48 (PSR) at ¶ 23. During the interview, Esposito admitted that he had been viewing child pornography for many years and admitted to abusing the victim as described above. *Id.* at ¶¶ 24−26. He told the officer "that he was not a predator because he loved and cared about children and believed that some children as young as 8 years old could consent to sexual relationships." *Id.* at ¶ 24.

On April 11, 2018, Esposito was indicted on 21 separate criminal counts. Counts I-XX (the "production counts") charged Sexual Exploitation of a Child under 18 U.S.C. §§ 2251(a) and (e), while Count XXI (the "possession count") charged Possession of Child Pornography under 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). Cr. Dkt. 11 at 3−5. The production counts, "each reflect[ed] a

---

[1] As the government chose to do, *see* dkt. 12 at 2, the Court will avoid references in the record to the specific relationship to protect the identity of the minor victim.

2

different instance of abuse documented in videos and images taken by the defendant." *Esposito*, 1 F.4th at 485. The indictment stated that "[o]n twenty separate occasions," Esposito did "use, employ, entice, persuade, induce, and coerce a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." Cr. Dkt. 11 at 3.

### B. Request for New Counsel

William Dazey of the Indiana Federal Community Defenders, Inc. ("IFCD") was appointed to represent Esposito. Cr. Dkt. 7. From early in the case, Esposito was frustrated by Attorney Dazey's lack of consistent communication with him, and on April 30, 2018, he wrote to the Court requesting new counsel. Cr. Dkt. 27; Dkt. 1-1 at 2−3, ¶ 35 (Esposito's Decl.). An ex-parte hearing was held, at which Attorney Dazey suggested that Attorney Gwendolyn Beitz serve as co-counsel. Dkt. 1-1 at 3, ¶ 40; *see also* dkt. 28 (scheduling order for *ex-parte* motion hearing); dkt. 29 (*ex-parte* minute order for hearing on defendant's request for new counsel). At the hearing, Esposito withdrew his request for different counsel and agreed to have both Attorneys Dazey and Beitz represent him. *Id.* at 3, ¶ 49; *see also* dkt. 30 (Attorney Beitz's notice of appearance).

Esposito wrote another letter to the Court on April 23, 2019. Dkt. 37. Because Esposito was still represented by counsel, the Court forwarded the letter to his counsel "to decide whether and in what form to present the information contained in it to the Court." Cr. Dkt. 37. No motion was ever filed related to counsel's continued representation of Esposito. *See Cr. Dkt. generally*. Three days later, Esposito filed his petition to enter a plea of guilty. Dkt. 38.

### C. Guilty Plea Hearing

On June 5, 2019, Esposito pled guilty to all counts of the indictment without entering into a plea agreement with the government. Cr. Dkt. 44. At the plea hearing, Esposito was represented by both of his attorneys. Cr. Dkt. 67 at 1 (Plea Tr). At the beginning of the hearing, Attorney Beitz

3

stated, "[W]e were informed in writing the Government intended to not make an offer in this case." *Id.* at 7.

The Court placed Esposito under oath, and then began its colloquy with him. *Id*. at 4. The Court asked Esposito whether he had fully discussed the charges with his attorneys, and whether he was "fully satisfied with the counsel, representation, and advice" he had been given by his attorneys, and he answered in the affirmative. *Id.* at 6−7. Esposito further affirmed that nobody had made "any promises or assurances to persuade [him] to plead guilty," and agreed that he was pleading guilty "of [his] own free will" and because he was guilty. *Id*. at 7.

The Court next explained that Counts 1 through 20 charged sexual exploitation of a child, and that those charges were based on "20 different images or videos," which Esposito said he understood. *Id.* at 7. The Court explained that "the distinguishing factor between each of the [production] counts would be the different video or image that is listed in the indictment," which Esposito said he also understood. *Id*. at 8−9. The Court informed Esposito that he faced up to 30 years for each of the production counts and up to 20 years for the possession count. *Id.* at 9−11. The Court explained that it would consider the sentencing guidelines and the 18 U.S.C. § 3553 factors, and that it could "order the sentences on the counts in your case to run concurrently or consecutively; that is, one after the other." *Id*. at 23. Esposito confirmed his understanding. *Id*.

Because the parties did not enter into a plea agreement, there was no written stipulation of facts, and the government instead offered its evidence through a witness, Detective John Pirics of the Carmel Police Department. *Id*. at 15. Detective Pirics summarized the evidence that the government would have presented at trial. *Id.* at 17−22. Relevant to one of Esposito's claims, Detective Pirics testified that "Esposito saved approximately 2 terabytes of child pornography on his laptop computer and various external drives." *Id.* at 19. Further, the government introduced as

an exhibit a chart that included descriptions of each of the 20 images or videos forming the bases of the production counts.[2] *Id.* at 21. Esposito said he reviewed the exhibit and that it was accurate. *Id.* Esposito further agreed to the factual basis as presented by Detective Pirics. *Id.*

The Court found Esposito was fully competent and capable of entering an informed plea, aware of the nature of the charges and consequences of his plea, and that his guilty plea was a knowing and voluntary plea supported by a factual basis. *Id.* at 27. The Court adjudged him guilty of the twenty-one Counts. *Id.*

### D. Sentencing

A presentence investigative report was prepared by the United States Probation Office. Cr. Dkt. 48. The report included the chart describing the images or videos. *Id*. at 5−8. The descriptions on that chart made clear that each count was based on a separate visual depiction of a distinct sexual act involving the victim.

The guideline range was calculated to be 620 years (7,440 months). *Id.* at ¶ 266 (citing USSG § 5G1.2(b)).

The PSR also discussed Esposito's personal background. *Id.* at 29−32. This included noting that he worked as a volunteer firefighter from 1981-1983 and was "a member of the National Fire Association, Indiana Fire Chiefs, New England Fire Chiefs, and was awarded Rookie of the Year and Firefighter of the Year" during his service. *Id.* at 31−32.

Defense counsel submitted two objections and clarifications to the report. *Id.* at 40. First, defense counsel objected to paragraph 21, which discussed Esposito's online chats with another offender in which Esposito asked the offender to kill Esposito's wife. *Id.* He insisted those comments were made in jest. Second, defense counsel made a clarification as to when Esposito

---

[2] While not available on the criminal docket, the chart introduced as an exhibit at the hearing is identical to the one that appears in paragraph 9 of the PSR. Cr. Dkt. 48 at 5−8.

began producing images of the victim's sexual abuse. *Id.* The PSR writer responded to both comments and finalized the report. *Id.*

Before the sentencing hearing, defense counsel filed a sentencing memorandum requesting a 420-month (35-year) sentence so that Esposito would have a chance of release from prison near the end of his life. Cr. Dkt. 58 at 1−2. The defense cited numerous sources about the severe psychological impact of sentencing a defendant to die in prison, and it also discussed the high cost of imprisoning elderly prisoners, the low likelihood of recidivism by them, and the modest deterrent effect of extremely long sentences (citing Judge Posner's concurrence in *United States v. Craig*, 703 F.3d 1001, 1004 (7th Cir. 2012)). *Id.* at 2, 4. The memo also emphasized Esposito's lack of criminal history and his acceptance of responsibility. *Id.* at 5.

The government also submitted a sentencing memorandum which recommended that Esposito be sentenced to 620 years based on "extreme forms of abuse and torture, and serious psychological manipulation and scarring" of the victim; that there was no reason to believe Esposito would have ceased his criminal activity had he not been caught by law enforcement; that the images produced and shared by Esposito would remain on the Internet forever, consistently revictimizing all the victims (both his relative and the other children whose images he solicited or shared); and that this sentence was similar to other defendants with similar conduct. Cr. Dkt. 52 at 10−13.

On January 7, 2020, the Court held Esposito's sentencing hearing. Cr. Dkt. 68. The Court noted the 620-year Sentencing Guideline range, and neither party objected. *Id.* at 6.

Before Esposito's allocution, the government read the victim impact statement of Esposito's abused relative. *Id.* at 10−13. In that statement, the victim described how the abuse made him feel

6

"alone, anxious, [and] afraid," that he tried to commit suicide on multiple occasions, and that he felt that Esposito treated him "like a dog[.]" *Id.*

Esposito then addressed the Court before the attorneys made arguments. He stated, "I still can't believe that I did . . . such horrifying things with a child, let alone [the victim]," and said his actions were "repulsive" and that they "disgust[ed]" and "sicken[ed]" him. *Id.* at 14. He acknowledged the severity of his crimes and expressed remorse, then spoke about his personal background, discussing his 13 years of service as a volunteer firefighter and other forms of public service. *Id.* at 15−18. He also said that "knowing there was no plea deal," and "that this case had the potential for a life sentence," he tried to provide information to the government and assist as much as he could with other cases. *Id.* at 18−19.

Esposito's attorneys then argued on his behalf. Attorney Beitz acknowledged "how serious" the case was and emphasized that she did not intend to minimize the pain the victim endured, but then argued that the government's request for a staggering 620-year sentence was not rational. *Id.* at 22−23. She emphasized that Esposito pleaded guilty without an agreement, which benefitted the victim, and had expressed "true remorse." *Id.* at 24−25. She also argued that a maximum sentence would make it difficult for Esposito to receive the programming he would need while incarcerated; would leave Esposito without hope, endangering himself and others while in prison; and would leave similarly situated defendants without any incentive to plead guilty in their cases. *Id.*

Finally, Attorney Beitz contrasted Esposito's case with that of David Bostic, whose case was also before this Court (*United States v. Bostic*, 1:11-cr-33-JMS-KPF). She pointed out that Bostic's case was also "severe and horrible," but there, the government argued that Bostic was more dangerous than other child sex offenders because he targeted very young, non-verbal children who would be unable to report their abuse. By the government's own reasoning, she argued,

7

Esposito should therefore receive a lower sentence than Bostic, who was sentenced to 315 years. *Id.* at 26−28.

Attorney Dazey then argued on Esposito's behalf. He began by noting that Esposito had maintained contact with his family "for reasons [Dazey] couldn't begin to contemplate" and he "wonder[ed] if all three of them are on some kind of different reality in terms of trying to work through what is going to happen to all of them as a family." *Id.* at 28−29. He acknowledged the crimes were "beyond significant" and "beyond serious," but he stressed that Esposito had accepted responsibility, and that while Esposito's crimes spanned many years, he was not a repeat offender who had been punished, released, and then reoffended because he "didn't learn his lesson." *Id.* at 29. Ultimately, Attorney Dazey argued that effective life sentences should be reserved for cases that are "incrementally more serious" than Esposito's, and that Esposito should at least be given the chance of release near the end of his life. *Id.* at 28−30.

In advocating for the 620-year sentence, the government emphasized the depravity of the sexual abuse which lasted for many years; the psychological trauma inflicted on his victim; the planning and sophistication involved in disseminating the images; and that, unlike in the Bostic case, there was no evidence of severe mental health issues on Esposito's part. *Id.* at 30−40. Regarding the possession offense, the government stated:

> From just what was found on his devices, the National Center for Missing and Exploited Children had 52,587 unique image files identified, almost 2,000 unique video files, comprising about 359 different series of children, and that does not count the multiples that were found throughout the devices, nor does it count the countless children who have yet to be identified.

*Id.* at 33.

Before imposing sentence, the Court discussed the nature and circumstances of the production offenses, noting that the word "torture" aptly described the "horror" that was inflicted

upon the victim, causing him severe "psychological and physical damage." *Id.* at 42−44. Ultimately, considering that "[p]rotection of the public is a statutory factor," the Court concluded it could not "take a chance that [the defendant would] ever be around children again," and imposed an effective life sentence. *Id.* at 46. The overall sentence included a 20-year maximum sentence on the possession count, which the Court imposed "because of the sheer . . . volume of materials, the acts contained within those materials, the number of victims identified." *Id*. at 48. On the production counts, the Court sentenced Esposito to 30 years for the charges that involved the most egregious conduct, and 20 years for the others, some running concurrently and the others consecutively. *Id.* at 47−49. Altogether, the sentences were imposed as follows: 30 years on each of Counts 1, 13, 14, 15, 17, and 20 years on each of Counts 2−12, 16, 18, 19, and 21. The Court ordered that Counts 1, 13, 14, 15, 17, 20, and 21 be served consecutively, for a total of 200 years.

### E.  Appeal

On direct appeal, Esposito argued only that "the district court should have determined his correct overall punishment and then conformed the sentences on the individual counts to achieve that total." *Esposito*, 1 F.4th at 487. The Seventh Circuit held that the district court's approach was functionally the same because "[t]he court's sentencing comments evince that it was pronouncing a de facto term of life imprisonment before pronouncing prison terms on each count." *Id*. at 488. Regardless, the "rigid, two-step sequence" that Esposito requested was not required by law. *Id*. Finding no error, the appellate court affirmed his sentence. *Id*. at 489.

### F.  28 U.S.C. § 2255 Motion

Esposito's motion to vacate under Section 2255 was timely filed on October 3, 2022. Dkt. 1. Esposito then filed an amended motion on October 11, 2022. Dkt. 4. He presents six grounds for relief in his amended motion. *Id.*

### III. Discussion

In the amended motion, Esposito raises the following freestanding claims:

(1) The indictments on Counts 2 – 20 violate Double Jeopardy;

(2) That the pleas to Counts 2 – 20 were not knowing or voluntary because they were multiplicitous, in that they charged the same criminal conduct that was charged in Count 1; and because counsel failed to inform Esposito that he could be sentenced to consecutive terms;

(3) That the possession count incorrectly alleged that Esposito possessed two terabytes of child pornography, which adversely affected Esposito's sentence on that count;

(4) That he suffered an irretrievable breakdown in communication with counsel; and

(5) That Esposito's 200-year sentence was excessive compared to similarly situated defendants, resulting in an unwarranted sentencing disparity in violation of 18 U.S.C. § 3553(a)(6).

Esposito's sixth claim is that Attorneys Dazey and Beitz were ineffective by (1) failing to investigate his case; (2) failing to challenge multiplicitous charges; (3) failing to argue that his sentence created an unlawful disparity with sentences in similar and less serious cases; (4) providing unhelpful arguments at sentencing; and (5) promising Esposito an unrealistic sentence for his pleas. Dkt. 4 at 1.

**A. Freestanding Claims**

The United States argues that Esposito procedurally defaulted his freestanding claims and that they are otherwise meritless.

Because these claims can be resolved on its merits, the Court need not address whether Esposito procedurally defaulted them.

Further, because many of these claims overlap with the ineffective assistance of counsel claims, the Court begins its analysis by providing the legal standard for those claims. A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

### i. Whether Counts 2−20 Were Multiplicitous or Otherwise Violated Double Jeopardy

Esposito argues that he could only lawfully be convicted of one count of producing child pornography. Dkt. 4 at 5−6. He argues that use of the word "any" in 18 U.S.C. § 2251 – prohibiting the use of "any minor" to engage in "any sexually explicit conduct" for the purpose of producing "any visual depiction" of such conduct – makes it unclear what the appropriate unit of prosecution is. Therefore, Esposito says, under the rule of lenity and principles of double jeopardy, he can only be found guilty of a single count of production, even though he produced 20 images of the victim's sexual abuse. *Id*. (citing *United States v. Edwards*, 836 F.3d 831, 836 (7th Cir. 2016); *United States v. Dixon*, 509 U.S. 688, 696 (1993); and *United States v. Larson*, 615 F.2sd 780, 788 (7th Cir. 2010)).

"A multiplicitous indictment charges a single offense as separate counts…in violation of the Double Jeopardy Clause of the Fifth Amendment." *United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015) (internal quotation omitted). "To determine whether an indictment is multiplicitous, [the court looks] to the applicable criminal statute to see what the allowable 'unit' of prosecution is—the minimum activity for which criminal liability attaches." *United States v. Haas*, 37 F.4th

11

1256, 1261 (7th Cir. 2022) (cleaned up). Courts who have addressed the issue have uniformly concluded that the appropriate unit of prosecution under Section 2251(a) is the *image* of the child being sexually abused. *See United States v. Esch*, 832 F.2d 531, 541–42 (10th Cir. 1987); *United States v. Smith*, 919 F.3d 1, 16 (1st Cir. 2019) (rejecting claim similar to Esposito that similarly relied on cases finding ambiguity in the felon-in-possession statute, 18 U.S.C. § 922(g)); *United States v. Fee*, 491 F. App'x 151, 157 (11th Cir. 2012); *and United States v. Tashbook*, 144 F. App'x 610, 614–15 (9th Cir. 2005)); *see also Haas*, 37 F.4th at 1263 (concluding that two text messages sent 27 minutes apart were properly charges as discrete "threats" under statute prohibiting threatening a federal official and were therefore not multiplicitous).

Esposito's charges for Counts 1 – 20 involved 20 distinct images and videos that he had created "on twenty separate occasions," which depicted discrete sexual acts. *See* Cr. Dkt. 48 at ¶ 9 (chart containing descriptions of each video or image). He was properly charged and sentenced for these 20 distinct counts. At the guilty plea hearing, Esposito reviewed the same chart that summarized each of the images or videos and agreed that they accurately summarized the distinct files. Cr. Dkt. 67 at 21. Thus, not only does his freestanding claim of error fail, but any claim that his plea was not knowing or voluntary or that his attorneys were ineffective for failing to object to the charges on this basis likewise fails. *Perez v. United States*, 286 F. App'x 328, 331–32 (7th Cir. 2008) ("Failure to raise a losing argument or pursue a futile motion . . . does not constitute ineffective assistance.").

    **ii.**    **Voluntariness of Plea Because of Sentence Prediction**

Esposito argues that his plea was not knowing or voluntary because his attorneys "left [him] under the impression he was facing 40 years, not 200." Dkt. 4 at 7; *see also, e.g.,* dkt. 1-1 at ¶ 140

(Esposito attesting that nothing at the guilty plea hearing indicated that "the 40-year sentence range [he] expected was unrealistic" given his timely guilty plea and acceptance of responsibility).

For a plea to be valid, it must be made voluntarily, knowingly, and intelligently. *United States v. Schaul*, 962 F.3d 917, 922 (7th Cir. 2020). "[A] defendant is normally bound by the representations he makes to a court during" his plea colloquy. *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010). "Justice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [a defendant] to renege on his representation under oath to the district court." *Id.* Therefore, "[j]udges need not let litigants contradict themselves." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). "[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *Id.*

Here, the Court advised Esposito of the sentences he faced by pleading guilty as charged, and that the Court had discretion to fashion a sentence within the statutory guidelines. Cr. Dkt. 67 at 9−11, 23. In addition to his attorney's prediction of a 40-year sentence, Esposito suggests he was misled by the Court because it advised him that it had "the discretion [. . .] to order the sentences on the counts in your case to run concurrently [. . . ]." *Id.* (ellipses included as written by Esposito). But Esposito conveniently leaves out that the sentence continued, "or consecutively; that is, one after the other; do you understand that?" to which he responded, "Yes, ma'am." Cr. Dkt. 67 at 23. Based on the Court's accurate advisements of his sentencing exposure and Esposito's clear expression that he understood, he cannot now state that his guilty plea was not knowing or voluntary. *See Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013) ("[R]epresentations made to a court during a plea colloquy are presumed to be true.") (citation and internal quotation marks omitted).

This claim also fails if analyzed as an ineffective assistance of counsel claim. This claim is easily disposed of on the prejudice prong. A petitioner who has pled guilty can only establish prejudice by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner cannot meet this standard with a "mere allegation" but must show a reasonable probability that he would have stood trial with "objective evidence." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). Here, Esposito states explicitly that he does not wish for his petition to be construed as a motion to withdraw his plea. Dkt. 4 at 11 n. 1.

Esposito was fully aware that by pleading open as charged, he faced a de facto life sentence. *See* Cr. Dkt. 68 at 18−19 (Esposito acknowledging during his allocution that "this case had the potential for a life sentence."). That he was disappointed that he received that sentence did not render his plea involuntary. This claim lacks merit.

### iii.    Sentencing Error Regarding Two-Terabyte Testimony

Next, Esposito claims the two-terabyte figure used to describe the volume of his child pornography collection was inaccurate (because some of the images were duplicates and because his hard drives had innocuous family pictures mixed in), and that this adversely affected his sentence on Count 21. Dkt. 4 at 8. First, this claim is contradicted by Esposito's own statement to the Court that affirmed that Detective Pirics' testimony was accurate. Cr. Dkt. 67 at 22. Further, the two-terabyte figure was twice mentioned in the PSR, but Esposito failed to object to it, despite making other objections to the report. Cr. Dkt. 48 at 8, 12, 40. Finally, the government explained at sentencing that "the National Center for Missing and Exploited Children has 52, 587 *unique* image files identified, almost 2,000 *unique* video files, comprising about 359 different series of children" which did not count duplicate images found on the devices. Cr. Dkt. 68 at 33 (emphasis

added). Thus, while Esposito focuses on the two-terabyte figure, the Court had an accurate picture of the voluminous number of unique images and videos found in Esposito's possession. This claim is plainly meritless.

### iv.  Breakdown in Communication

In his fifth freestanding claim, Esposito argues that the district court erred by not appointing him new counsel after he twice expressed his frustration with his attorneys. He cites to *United States v. Ryals*, 512 F.3d 416, 420 (7th Cir. 2008), in which the Seventh Circuit held that the trial court abused its discretion when it denied a motion for new counsel because there had been a complete breakdown in the communication between the defendant and his attorney. Notably, at the sentencing hearing in that case (when the district court took up the motion to withdraw), defense counsel answered "No" when the court asked if he could adequately represent him, and then counsel proceeded to remain silent for the remainder of the hearing. *Id.* at 418.

In this case, there were two instances when Esposito conveyed to the Court his dissatisfaction with his attorneys by sending pro se letters. Represented litigants may not file motions, however. Regardless, after he sent the first letter, the Court held an ex-parte hearing during which Esposito withdrew his request for different counsel. Dkt. 1-1 at ¶ 49. When Esposito sent the second letter, the Court properly forwarded it to counsel and advised them to file whatever necessary motion. Cr. Dkt. 37. Esposito's counsel never filed a motion to withdraw, and at his guilty plea, Esposito expressed satisfaction with their performance. Cr. Dkt. 67 at 6-7. Thus, this case bears no resemblance to *Ryal* because Esposito withdrew his first request and never made a proper second request to withdraw counsel. Further, there is no evidence in the record that Esposito directed his attorneys to file a motion to withdraw after he sent the Court the second letter. *See* dkt. 1-1 at ¶¶ 113−87 (Esposito describing mailing the second letter to the Court on April 22, 2019,

15

and describing his remaining interactions with Attorneys Dazey and Beitz through when they filed a motion to withdraw after the sentencing hearing). Thus, this claim fails on the merits.

    v.    **Sentencing Disparity Claim**

Esposito's final freestanding claim is that his 200-year prison term creates an unwarranted sentencing disparity, and he should therefore be resentenced. Section 3553(a)(6) directs a sentencing court to consider "the need to avoid un-warranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Esposito's sentence does not run afoul of Section 3553(a)(6) because it complied with the Sentencing Guidelines, which the parties agreed called for an effective life sentence of 620 years. Cr. Dkt. 68 at 6. "Because the guidelines are designed to avoid unwarranted disparities, a sentence . . . that is within the guidelines range necessarily complies with § 3553(a)(6)." *United States v. Vaughn*, 431 F. App'x 507, 509–10 (7th Cir. 2011); *accord United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("a district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities"). For this reason, this claim fails.

    **B.  Ineffective Assistance of Counsel Claims**

Esposito's final claim is that Attorneys Dazey and Beitz were ineffective by (1) failing to investigate his case; (2) failing to challenge multiplicitous charges; (3) failing to argue that his sentence created an unlawful disparity with sentences in similar and less serious cases; (4) providing unhelpful arguments at sentencing; and (5) promising Esposito an unrealistic sentence for his pleas. His second, third, and fifth grounds have already been denied as meritless above and warrant no further discussion.

### i. Failure to Investigate

Esposito claims that his attorneys were ineffective because they did not properly investigate his case by not taking the following steps: interviewing his wife or the victim (for the purpose of discovering that Counts 1–20 were multiplicitous and that there were fewer images than discussed); failing to conduct an adequate mitigation investigation for the sentencing proceeding (which would have revealed his years of service as a decorated volunteer firefighter and the absence of accusations of abusing any other child).[3]

"The *Strickland* protections apply not only in criminal trials but also at sentencing, where the defendant's counsel is expected to offer a case to mitigate punishment." *Laux v. Zatecky*, 890 F.3d 666, 674 (7th Cir. 2018). Thus, "defense counsel has an 'obligation to conduct a thorough investigation of the defendant's background' in advance of such proceedings, with an eye toward evidence that speaks in the client's favor." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 396 (2000)). In assessing whether trial counsel performed ineffectively at sentencing, the court must "evaluate the totality of the available mitigation evidence in deciding whether counsel was ineffective." *Id.* (cleaned up). "The Sixth Amendment does not require counsel to investigate every conceivable line of mitigation evidence—it requires counsel to make reasonable decisions about which matters to pursue." *Id.* at 675.

Counsel was not deficient for failing to interview Esposito's wife or the victim because, as discussed above, Counts 1–20 were not multiplicitous but rather were charged as separate counts

---

[3] Esposito's declaration in support of his 2255 motion is riddled with other complaints about counsel's performance—including that they failed to advise him about his divorce; failed to ensure he had a C-Pap machine in jail; that Attorney Dazey signed a letter with a smiley face doodle; that counsel rescheduled visits; etc. *See* dkt. 1-1. But these particular issues are not discussed in his amended motion, and, in any event, the Court does not understand how any of these issues prejudiced Esposito.

based on unique videos and images. Esposito does not otherwise explain how interviewing these two witnesses would have been helpful to his case at sentencing.

Further, counsel's decision not to further investigate Esposito's time as a volunteer firefighter was reasonable. This evidence was already presented to the Court, both in the PSR and through Esposito's allocution. Ultimately, the Court gave this evidence little weight because it determined that—in light of the horrific nature of Esposito's crime, the impact his crimes had on the victims, and the Court's duty to protect the public—Esposito needed to spend the rest of his life imprisoned.

Finally, Esposito's claim that trial counsel performed deficiently for cancelling a mitigation investigation fails because he does not explain with any specificity what other available mitigation evidence would have been produced that could have affected the outcome of his sentence. *See, e.g.*, *Williams v. United States*, 879 F.3d 244, 249 (7th Cir. 2018) ("To demonstrate prejudice, Williams had the burden to show a reasonable probability" of a different outcome "but for the failure by his counsel.").

      ii.      **Adequacy of Arguments at Sentencing**

Esposito finally argues that his attorneys were ineffective because their arguments at sentencing were harmful. Specifically, he takes issue with Attorney Beitz's decision to highlight the *Bostic* case because he believed it simply "serve[d] as a guidepost as to how best to lock-up [Esposito] forever." Dkt. 4 at 21. Attorney Beitz made a strategic decision to discuss another case that was before this Court to contrast that defendant's behavior with Esposito's in the hope that it would result in a better sentence. Esposito's disagreement with this strategy does not establish deficient performance. *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions,

18

strategic choices must be respected in these circumstances if they are based on professional judgment.").

Esposito also takes issue with Attorney Dazey's comments at the beginning of sentencing that he could not understand why Esposito's family was still in contact with him, and that perhaps they were "on some kind of a different reality in terms of trying to work through what has happened[.]" Dkt. 4 at 14−15 (citing Cr. Dkt. 68 at 28−29). While Esposito may have taken some personal offense to these comments, he does not explain how he was prejudiced by them. Rather, Attorney Dazey and Attorney Beitz both presented cogent and relevant arguments about the harmful impacts of sentencing Esposito to a life sentence and why he was deserving of mercy. Cr. Dkt. 68 at 22−30. Again, the Court emphasized that Esposito's de facto life sentence is due to the horrific nature of his crime; it is not the result of his attorneys' arguments. *See McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2018) (explaining that counsel may provide effective assistance of counsel "even if [a] strategy was ultimately unsuccessful").

Esposito's ineffective assistance of counsel claims lack merit, and he is not entitled to relief on these claims.

### IV.  Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Esposito has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional

19

right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

## V. Conclusion

For the reasons explained in this Order, Esposito's 28 U.S.C. § 2255 motion is **denied**. The **clerk is directed** to enter **final judgment**, to docket a copy of this order in the criminal case (No. 1:18-cr-00109-JMS-MJD-1), and to **terminate** the pending 2255 motion (dkt. [103]) in that case. No certificate of appealability shall issue.

**IT IS SO ORDERED.**

Date: 5/29/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY ESPOSITO
16305-028
MARION - USP
MARION U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 1000
MARION, IL 62959

All Electronically Registered Counsel